COOLEY LLP
REUBEN H. CHEN (228725)
(rchen@cooley.com)
LAM K. NGUYEN (265285)
(lnguyen@cooley.com)
KYUNG TAECK MINN (334439)
(rminn@cooley.com)
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone:    (650) 843 5000
Facsimile:    (650) 849 7400

Attorneys for Defendant
PARTICLE INDUSTRIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SOCIAL POSITIONING INPUT SYSTEMS, LLC,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>PARTICLE INDUSTRIES, INC.,<br><br>    *Defendant*. | Case No. 3:21-cv-00464-WHO<br><br>District Judge William H. Orrick<br><br>**PARTICLE INDUSTRIES' NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)**<br><br>**DATE:** **JUNE 23, 2021**<br>**TIME:** **2:00 PM**<br>**LOCATION:** **San Francisco Courthouse Courtroom 2 – 17th Floor 450 Golden Gate Ave. San Francisco, CA 94102** |

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION .................................................................................................. 2

II.     BACKGROUND AND STATEMENT OF FACTS ........................................... 2

III.    ARGUMENT ........................................................................................................ 5

    A.   Legal Standard ......................................................................................... 5

        1.   Federal Rule of Civil Procedure 12(b)(6) ................................ 5

        2.   35 U.S.C. § 101 ........................................................................ 6

    B.   The '365 Patent Is Invalid Under 35 U.S.C. § 101 .................................. 7

        1.   *Alice* step 1:  Claim 1 is directed to an abstract idea.................................. 7

            a.   Claim 1 is directed to the abstract idea of sharing address information .................................................................... 7

            b.   Claim 1 is not directed to a specific improvement to computer functionality. ...................................................... 9

        2.   *Alice* step 2:  Claim 1 does not recite an inventive concept..................... 13

        3.   The remaining claims are also abstract. .................................... 15

IV.     CONCLUSION .................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Labs of Tex. v. DirecTV*,
838 F.3d 1253 (Fed. Cir. 2016)...................................................................................... 4, 12

*Alice v. CLS Bank Int'l*,
573 U.S. 208 (2014) ................................................................................................... *passim*

*Apple v. Ameranth*,
842 F.3d 1229 (Fed. Cir. 2016) ............................................................................................ 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................................. 5

*Bell Atl. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................................. 5

*Bilski v. Kappos*,
561 U.S. 593 (2010) .............................................................................................................. 6

*BSG Tech v. Buyseasons*,
899 F.3d 1281 (Fed. Cir. 2018) .......................................................................................... 13

*buySAFE v. Google*,
765 F.3d 1350 (Fed. Cir. 2014) .......................................................................................... 14

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2016) ....................................................................................... 2, 8

*ChargePoint v. SemaConnect*,
920 F.3d 759 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 983 (2020) ......................................... 5

*Content Extraction & Transmission LLC v. Wells Fargo Bank N.A.*,
776 F.3d 1343 (Fed. Cir. 2014) .......................................................................................... 15

*Credit Acceptance v. Westlake Servs.*,
859 F.3d 1044 (Fed. Cir. 2017)..................................................................................... 14, 16

*CyberSource v. Retail Decisions*,
654 F.3d 1366 (Fed. Cir. 2011)............................................................................................. 8

*Diamond v. Chakrabarty*,
447 U.S. 303 (1980)............................................................................................................... 6

*Diamond v. Diehr*,
450 U.S. 175 (1981)............................................................................................................... 6

*Elec. Commc'n Techs. v. ShoppersChoice.com*,
　958 F.3d 1178 (Fed. Cir. 2020) ............................................................................. 14

*Elec. Power Grp. v. Alstom S.A.*,
　830 F.3d 1350 (Fed. Cir. 2016) ..................................................................... 6, 8, 16

*Enfish, LLC v. Microsoft Corp.*,
　822 F.3d 1327 (Fed. Cir. 2016) ..................................................................... 2, 9, 11

*Ericsson v. TCL Commc'n Tech. Holdings*,
　955 F.3d 1317 (Fed. Cir. 2020) ..................................................................... 6, 8, 12

*Evolutionary Intelligence v. Sprint Nextel*,
　677 F. App'x 679 (Fed. Cir. 2017) ...................................................................... 15

*FairWarning IP v. Iatric Sys.*,
　839 F.3d 1089 (Fed. Cir. 2016) ............................................................................. 5

*Fitbit Inc. v. AliphCom*,
　16-cv-00118-BLF, 2017 WL 819235 (N.D. Cal. Mar. 2, 2017) ........................... 12

*Gottschalk v. Benson*,
　409 U.S. 63, 67 (1972) ........................................................................................... 6

*Hewlett Packard Co. v. ServiceNow, Inc.*,
　14-cv-00570-BLF, 2015 WL 1133244 (N.D. Cal. Mar. 10, 2015) ........................ 12

*Intellectual Ventures I v. Capital One Bank (USA)*,
　792 F.3d 1363 (Fed. Cir. 2015) ...................................................................... 14, 15

*Intellectual Ventures I v. Capital One Fin.*,
　850 F.3d 1332 (Fed. Cir. 2017) ............................................................................. 4

*Interval Licensing v. AOL*,
　896 F.3d 1335 (Fed. Cir. 2018) ........................................................................... 11

*Internet Patents Corp. v. Active Network, Inc.*,
　790 F.3d 1343 (Fed. Cir. 2015) ........................................................................... 12

*Location Based Servs. v. Niantic*,
　295 F. Supp. 3d 1031 (N.D. Cal. 2017), *aff'd*, 742 F. App'x 506 (Fed. Cir.
　2018) ..................................................................................................................... 15

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
　132 S. Ct. 1289, 1294 (2012) ............................................................................. 6, 7

*Opentv, Inc. v. Apple Inc.*,
　5:15-cv-02008-EJD, 2016 WL 344845 (N.D. Cal. Jan. 28, 2016) ........................ 11

*Papasan v. Allain*,
    478 U.S. 265 (1985) ................................................................................................ 11

*Parker v. Flook*,
    437 U.S. 584 (1978) .................................................................................................. 6

*RecogniCorp v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017) ................................................................................. 6

*Return Mail, Inc. v. U.S. Postal Service*,
    868 F.3d 1350 (Fed. Cir. 2017) ................................................................................. 9

*SAP Am. v. Investpic*,
    898 F.3d 1161 (Fed. Cir. 2018) ................................................................................. 5

*Secured Mail Sols. v. Universal Wilde*,
    873 F.3d 905 (Fed. Cir. 2017) ................................................................................... 8

*Silver State Intellectual Techs. v. Facebook*,
    314 F. Supp. 3d 1041 (N.D. Cal. 2018) .................................................................. 15

*Synopsys v. Mentor Graphics*,
    839 F.3d 1138 (Fed. Cir. 2016) ............................................................................... 11

*In re TLI Commc'ns Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) ........................................................................ 8, 9, 12

*In re TLI Commc'ns Patent Litig.*,
    87 F. Supp. 3d 773, 794 (E.D. Va. 2015) .............................................................. 13

*TriDim Innovations v. Amazon.com*,
    207 F. Supp. 3d 1073 (N.D. Cal. 2016) .................................................................. 12

*Two-Way Media v. Comcast Cable Commc'ns*,
    874 F.3d 1329 (Fed. Cir. 2017) ................................................................. 6, 8, 12, 14

*Ultramercial v. Hulu*,
    772 F.3d 709 (Fed. Cir. 2014) ....................................................................... 5, 6, 13

*Voter Verified v. Election Sys. & Software*,
    887 F.3d 1376 (Fed. Cir. 2018) ................................................................................. 5

*WhitServe v. Donuts*,
    809 F. App'x 929 (Fed. Cir. 2020) ........................................................................... 5

*Windy City Innovations v. Microsoft*,
    193 F. Supp. 3d 1109 (N.D. Cal. 2016) .................................................................... 5

**Statutes**

35 U.S.C. § 101 ................................................................................................................. *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ............................................................... 1, 2, 5

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on June 23, 2021 at 2:00 pm, or as soon thereafter as the matter may be heard in this Court, located at San Francisco Courthouse , Courtroom 2 – 17th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Particle Industries, Inc. ("Defendant" or "Particle") will and hereby does move the Court to dismiss Plaintiff Social Positioning Input Systems, LLC's ("Plaintiff" or "SPIS") Complaint (Dkt. 1) with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the claims of U.S. Patent No. 9,261,365 ("'365 patent") (Dkt.1-1) are invalid under 35 U.S.C. § 101.  This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the pleadings, all matters of which the Court may take judicial notice, and any other argument or evidence that may be presented in support of this Motion.

## STATEMENT OF RELIEF REQUESTED

The Complaint asserts one patent:  U.S. Patent No. 9,261,365.  This motion seeks to invalidate the claims of the '365 patent under 35 U.S.C. § 101.  Particle requests that this Court dismiss SPIS's Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) because the claims of the '365 patent are invalid under § 101.  The issue to be decided by this Court is whether the claims of the '365 patent are directed to an abstract idea and lack an inventive concept, thus constituting patent-ineligible subject matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

SPIS's Complaint should be dismissed because the '365 patent is invalid under 35 U.S.C. § 101 for claiming patent-ineligible subject matter.

The claims of the '365 patent are directed at the abstract idea of sharing address information. This falls squarely under the category of "claims reciting the collection, transfer, and publishing of data" that the Federal Circuit has consistently held to be directed to a patent-ineligible abstract idea. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2016); *see also infra*, Section III.B.1.a. Furthermore, the claims of the '365 patent are not directed to specific improvements in computer functionality. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016) (holding that claims directed to a "specific improvement to computer functionality" are patent eligible).

In describing the basic idea of sending and receiving address information, the '365 patent fails to disclose any novel application of that idea. The specification of the '365 patent admits to this by describing the techniques that it utilizes as "conventional," "known," or "standard". *See infra*, Section III.B.1.b. Because the '365 patent merely recites "well-understood, routine [and] conventional activit[ies] previously known to the industry," it does not provide an inventive concept that would render an abstract idea patent-eligible. *Alice v. CLS Bank Int'l*, 573 U.S. 208, 225 (2014) (second alteration in original, internal quotation marks and citation omitted).

The '365 patent is invalid under 35 U.S.C. § 101 for claiming a patent-ineligible abstract idea without disclosing an inventive concept. Particle respectfully requests that the Court dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## II.   BACKGROUND AND STATEMENT OF FACTS

On January 20, 2021, SPIS filed this lawsuit accusing Particle of infringing at least claim 1 of the '365 patent. In particular, SPIS accuses Particle's "Particle Industries fleet tracking platform, Particle Tracking System, app, and/or associated hardware and/or software" of infringement. (Dkt. 1, ¶ 21.)

The '365 patent-in-suit is titled "Device, system and method for remotely entering, storing

and sharing addresses for a positional information device."  (Dkt. 1-1 (Ex. A is the '365 patent).)

Filed on September 9, 2013 and issued on February 16, 2016, the '365 patent claims priority to

April 28, 2006.

The specification of the '365 patent starts out by recognizing problems associated with the

**local** storage of address data on GPS devices.  (*See* '365, 1:26-2:25.)  For example, the '365 patent

states that "different devices recognize addresses differently . . . if a user tries to program the

address 19333 Collins Avenue, Sunny Isles, Fla., many devices will not accept this address . . .

some GPS devices will accept Sunny Isles Beach as the proper address, while others will only

accept North Miami Beach, while still others will require an entry of North Miami, while still others

will only recognize Sunny Isles as the correct entry." (*See* '365, 1:56-2:3.)

The '365 patent purports to provide a solution to those problems by **remotely** entering,

storing, and sharing address data for GPS devices.  (*See* '365, 2:46-48.)  However, the '365 patent

merely describes an abstract idea—sharing address information—using conventional components

and communication systems that were known in the prior art.  The specification generally describes

remotely sharing addresses amongst GPS devices.  (*See* '365, 8:23-34 ("a system and method for

remotely entering, storing and sharing location address information will be described").)  The '365

patent contemplates a customer service center that remotely shares address information to GPS

devices.  (*See* '365, 9:29-32 ("[i]n one embodiment, the customer service center includes a live

operator 303 that has access to server 304 for looking up address information and transmitting the

information to the device").)  The specification further describes a variety of situations in which

vehicle drivers need assistance finding or entering address data into their GPS devices.  (*See* '365,

12:9-10 ("[a] driver . . . wishes not to stop but needs direction to a destination."); 12:27-28 ("[a]

driver of a vehicle needs assistance in locating a point of interest such as a museum in a designated

city."); 12:40-46 ("[w]hen the driver enters the address information into the vehicle's GPS device,

. . . [including] different permeations of the address including different cities, different street

numbers, and different spellings of the street . . . [but] nothing works for the driver."); 13:3-5 ("[a]

driver wishes to be provided route information for a trip."); 13:18-20 ("[a] driver books a hotel

reservation or a concert event online . . . [and asks for] directions to the location."); 13:29-32 ("[a]

driver of a vehicle needs . . . an address that is stored in his/her other vehicle . . . [that] is not geographically close.").)  However, the specification does not provide any technical details on how address information is shared to those drivers in need; the specification merely discloses in functional terms the driver calling a service operator and the service operator remotely sending address data to the driver's GPS device.  (*See* '365, 12:9-13:46.)

Moreover, the claims of the '365 patent are directed to the unremarkable idea of **sharing address information**.  Independent claim 1, which is representative, recites:

> 1. A method for receiving location information at a positional information device, the method comprising:
>
>> sending a request from a requesting positional information device to a server for at least one address stored in at least one sending positional information device, the request including a first identifier of the requesting positional information device;
>>
>> receiving at the requesting positional information device, from the server, a retrieved at least one address to the requesting positional information device wherein the server determines a second identifier for identifying the at least one sending positional information device based on the received first identifier and retrieves the requested at least one address stored in the identified at least one sending positional information device.

('365, claim 1.)  It is straightforward to discern the claimed concept after "[s]tripping [the claim] of excess verbiage".  *Affinity Labs of Tex. v. DirecTV*, 838 F.3d 1253, 1256-57 (Fed. Cir. 2016); *Intellectual Ventures I v. Capital One Fin.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017.)  The claimed method simply (i) requests positional information from a device to another device via a server, and (ii) receives the requested positional information from the other device via a server.  (*See* '365, claim 1.)  This amounts to the abstract idea of sharing address information.

The technical-sounding "jargon" in claim 1—such as "positional information device," "first identifier," and "second identifier"—are not technical at all.  The specification admits that the "positional information devices" are understood to be generic GPS devices.  (*See* '365, Abstract ("a positional information device, e.g., a global positioning system (GPS) device").)  The specification also reveals that "identifiers" are understood to be mobile phone numbers, IP addresses, or Internet cookies.  ('365, 2:57-59 ("[t]he receiving step includes receiving an identifier of the device, wherein the identifier is a mobile phone number or an IP address."); 10:33-35 ("the

user may be identified at the server by an identifier, e.g., an Internet cookie, previously placed on the user's local computer 310.").)  Thus, claim 1 of the '365 patent recites using generic techniques to establish a communications link between one or more devices and transfer information.  No technical details are disclosed, much less claimed, as to how these processes are accomplished. The '365 patent relies on preexisting technologies to accomplish real-world tasks.

## III.    ARGUMENT

### A.    Legal Standard

#### 1.    Federal Rule of Civil Procedure 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted.  A dismissal under Fed. R. Civ. P. 12(b)(6) is proper where, as here, there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Windy City Innovations v. Microsoft*, 193 F. Supp. 3d 1109, 1112 (N.D. Cal. 2016) (citations omitted).  The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007).  Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the tenet that factual allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). Courts do not assume facts not alleged, nor do they draw unwarranted inferences, but should draw on their common sense and judicial experience. *See id.*, 556 U.S. at 679.

Patent ineligibility under 35 U.S.C. § 101 is a threshold issue that is routinely resolved on a Rule 12(b)(6) or (c) motion as a matter of law. *E.g.*, *ChargePoint v. SemaConnect*, 920 F.3d 759, 765-66, 777 (Fed. Cir. 2019) (affirming grant of 12(b)(6) motion of § 101 invalidity); *Voter Verified v. Election Sys. & Software*, 887 F.3d 1376, 1384-85, 1386 (Fed. Cir. 2018) (same); *FairWarning IP v. Iatric Sys.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (same); *WhitServe v. Donuts*, 809 F. App'x 929, 932 (Fed. Cir. 2020) (same); *SAP Am. v. Investpic*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (affirming grant of 12(c) motion of § 101 invalidity).  Resolving patent ineligibility on the pleadings minimizes "expenditure of time and money by the parties and the court," guards against "vexatious infringement suits[,]" and "protects the public" from patents that improperly monopolize the public

store of knowledge. *Ultramercial v. Hulu*, 772 F.3d 709, 719 (Fed. Cir. 2014) (Mayer, J., concurring) (citing *Twombly*, 550 U.S. at 558).

## 2.    35 U.S.C. § 101

35 U.S.C. § 101 sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter."  The law also recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and **abstract ideas**." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added).  Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski v. Kappos*, 561 U.S. 593, 611-12 (2010).  "[A]bstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (citing *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

The Supreme Court's two-step *Alice* test is used to determine whether a patent claim is directed to patent ineligible subject matter. *Alice*, 573 U.S. at 217.  At *Alice* **step one**, the court determines whether the claims are "directed to" a patent-ineligible concept, such as an abstract idea. *Id.*  The court determines whether the claims' "focus"—*i.e.*, their "character as a whole"—is an abstract idea. *Elec. Power Grp. v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).  If the court finds that the claims are abstract, it must then determine under *Alice* **step two** whether the claims recite an "inventive concept" sufficient to "transform the nature of the claim into a patent-eligible subject matter." *Ultramercial*, 772 F.3d at 715-16; *Alice*, 573 U.S. at 214-17.

Federal Circuit law holds: "[t]o save a patent at step two, an inventive concept must be evident **in the claims**." *Two-Way Media v. Comcast Cable Commc'ns*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) (emphasis added) (citing *RecogniCorp v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017)); *Ericsson Inc. v. TCL Commc'n Tech. Holdings*, 955 F.3d 1317, 1329 (Fed. Cir. 2020) ("no reason to import the allegedly novel layered architecture described in the specification into the language of the claims").  Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Alice*, 573 U.S. at 221 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)).  Token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of

use, field of use, or technological environment—does not meaningfully limit a claim as to make it patent-eligible. *See, e.g., Mayo*, 132 S. Ct. at 1297-98, 1300-01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191-92 n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300. A claim reciting merely "well-understood, routine [and] conventional activit[ies] previously known to the industry" cannot provide an inventive concept. *Alice*, 573 U.S. at 225 (second alteration in original, internal quotation marks and citation omitted).

## B.     The '365 Patent Is Invalid Under 35 U.S.C. § 101

The Complaint should be dismissed with prejudice, because the claims of the '365 patent are invalid under § 101. Claim 1 of the '365 patent fails both steps of the *Alice* test because it is directed to the patent-ineligible abstract idea of requesting and receiving address information.

### 1.     *Alice* step 1: Claim 1 is directed to an abstract idea.

#### a.     Claim 1 is directed to the abstract idea of sharing address information

Claim 1 of the '365 Patent is directed to the abstract idea of sharing address information. Claim 1 can be broken down as follows:

| Claim Language | Claimed Idea |
|---|---|
| 1. A method for receiving location information at a positional information device, the method comprising: | |
| sending a request from a requesting positional information device to a server for at least one address stored in at least one sending positional information device, the request including a first identifier of the requesting positional information device; | Requesting address information |
| receiving at the requesting positional information device, from the server, a retrieved at least one address to the requesting positional information device wherein the server determines a second identifier for identifying the at least one sending positional information device based on the received first identifier and retrieves the requested at least one address stored in the identified at least one sending positional information device. | Receiving address information |

Stripping claim 1 of its verbiage reduces it to two generic limitations, (i) requesting address information and (ii) receiving address information, which could conceivably cover any generic process of sharing address information.

Courts have found similar patent claims to be directed to abstract ideas. Recently, the Federal Circuit held that "[c]ontrolling access to resources is exactly the sort of process that 'can be performed in the human mind, or by a human using a pen and paper,' which we have repeatedly found unpatentable." *Ericsson Inc.*, 955 F.3d at 1327 (Fed. Cir. 2020) (citing *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011)). Claim 1 is analogous to the claims at issue in *Ericsson* in that requesting and receiving address information are precisely the types of activities that can be performed "by a human using a pen and paper." *Id.* For example, a first person could call a second person located remotely from the first person and ask for address information of where a third person is located that is known to the second person. In response, the second person may retrieve the address and then provide it to the requesting first person.[1] Because this process of controlling access to resources (address information) can be performed entirely by humans with pen and paper, the claims of the '365 Patent are invalid under the same rationale expressed by the Federal Circuit in *Ericsson* and *CyberSource*.

Claim 1 also falls squarely within the category of "claims reciting the collection, transfer, and publishing of data" that the Federal Circuit has consistently held to be directed to an abstract idea. *Cellspin Soft*, 927 F.3d at 1315; *see also Elec. Power Grp.*, 830 F.3d at 1353 (acknowledging that claims reciting "collecting information, analyzing it, and displaying certain results" fall into "a familiar class of claims 'directed to' a patent-ineligible concept"); *In re TLI Commc'ns Patent Litig.*, 823 F.3d 607, 610 (Fed. Cir. 2016) (concluding that claims reciting "recording . . . storing . . . transmitting . . . [and] receiving" digital images were directed to an abstract idea); *Two-Way Media*, 874 F.3d at 1337 (holding that the steps of sending, routing, monitoring, and accumulating

---

[1] An even more specific example would be the following: Jack is at home and needs to pick up his son John, who is at a friend's house. Jack doesn't know the address of the friend's house and John recently just received a new cell phone and number, and Jack does not recall the new phone number. So Jack calls his wife Jill, who is at work. Jill, being more responsible, has her son John's new phone number. Jill calls John and gets the address of where John is located and then provides that address to Jack. Jack writes down the address and picks up his son John.

1    information were directed to an abstract idea).  Further, the usage of a "unique identifier . . . does

2    not necessarily render an abstract idea less abstract."  *Secured Mail Solutions, LLC v. Universal*

3    *Wilde, Inc.*, 873 F.3d 905, 909-10 (Fed. Cir. 2017) (holding that patent claims were "directed to the

4    abstract idea of communicating information about a [mail object]" and that the use of an identifier

5    did not render the abstract idea patent eligible).  This is especially so when the '365 patent does not

6    recite any "specific details of the [identifier] or the equipment for generating and processing it."

7    *Id.* at 910.  Rather, the specification of the '365 patent merely discloses that "identifiers" are

8    understood to be mobile phone numbers, IP addresses, or Internet cookies.  ('365, 2:57-59 ("[t]he

9    receiving step includes receiving an identifier of the device, wherein the identifier is a mobile phone

10   number or an IP address."); 10:33-35 ("the user may be identified at the server by an identifier,

11   e.g., an Internet cookie, previously placed on the user's local computer 310.").)

12          Even if claim 1 limits the context of using address information to GPS devices, the Federal

13   Circuit has held that "relaying mailing address data" is a patent-ineligible abstract idea.  *Return*

14   *Mail, Inc. v. U.S. Postal Service,* 868 F.3d 1350, 1368 (Fed. Cir. 2017) (reversed on different

15   grounds).  The court in *Return Mail* added that "'limit[ing] the abstract idea to a particular

16   environment,' here a mail processing system with generic computing technology, 'does not make

17   the claims any less abstract for the step 1 analysis.'" *Id.* (citing *In re TLI*, 823 F.3d at 613).  Thus,

18   the '365 patent's abstract idea of sharing information does not become any less abstract by limiting

19   its application to location or address information.

20                              **b.     Claim 1 is not directed to a specific improvement to computer**
                                    **functionality.**
21

22          The Federal Circuit has explained that at *Alice* step 1, "[w]e determine whether the claims

23   'focus on a specific means or method that improves the relevant technology' or are 'directed to a

     result or effect that itself is the abstract idea and merely invoke generic processes and machinery.'"
24
     *Apple v. Ameranth*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (citation omitted).  Claims that are
25
     "directed to a specific improvement to the way computers operate" fall under the former category
26
     of patent-eligible subject matter.  *Enfish*, 822 F.3d at 1336.  Claim 1 of the '365 patent, on the other
27
     hand, falls squarely in the latter category of patent-ineligible abstract ideas.  Claim 1, as described
28

in the '365 patent specification, reveals no specific improvement to computer functionality, but instead shows a heavy reliance on generic computer technologies—or no computer technology at all—to carry out the abstract idea of sharing address information.  (*E.g.*, '365, 2:57-59 ("The receiving step includes receiving an identifier of the device, wherein the identifier is a **mobile phone number** or an **IP address**.") (emphasis added); 5:17-25 ("The locational information module 122 may include a receiver and antenna ANT employing **conventional** locational information processing technology such as Global Positioning Satellite (GPS) Technology, Loran Technology, or any other available locational technology, to indicate the exact location or coordinates, e.g., latitude, longitude and altitude, of the device 100.") (emphasis added); 5:60-6:3 ("The device 100 of the present disclosure will contain a user input module 126 to either receive user instructions via text input by the way of buttons 108, a **standard** keyboard interface coupled to the device, or a character recognition capture device which translates user text input into alphanumeric characters. . . . Such input devices are **standard** and **currently available** on many electronic devices including portable digital assistants (PDAs) and cellular telephones.") (emphasis added); 6:65-7:5 ("The wireless connection will operate under any of the various **known** wireless protocols including but not limited to Bluetooth$^{TM}$ interconnectivity, infrared connectivity . . . Wi-Fi . . . or any other type of communication protocols or systems currently existing or to be developed for wirelessly transmitting data.") (emphasis added); 7:5-8 ("The communication module will compress and encode the encrypted information for transmission using any **known** wireless communication technology.") (emphasis added); 8:42-46 ("The server 304 may be connected to the communications network 302, e.g., the Internet, by any **known** means, for example, a hardwired or wireless connection 308, such as dial-up, hardwired, cable, DSL, satellite, cellular, PCS, wireless transmission [], etc.") (emphasis added); 8:52-58 ("[T]he server 304 will communicate using the various **known** protocols such as [TCP/IP, FTP, HTTP], etc. and secure protocols such as [IPSec, PPTP, SSL Protocol], etc.") (emphasis added); 10:33-35 ("When utilizing the client application program, the user may be identified at the server by an identifier, e.g., an **Internet cookie**, previously placed on the user's local computer 310.") (emphasis added); 10:39-45 ("The remote server then utilizes a **standard** database lookup program . . . to find out information on the user's

device[.]") (emphasis added); 10:46-50 ("The server 304 then resolves the address into longitude or latitude coordinates using **standard** computer processing power and computer programs on the global computer network including but not limited to teraserver.microsoft.com, geocoder.us, yahoo.com, and maporama.com.") (emphasis added); 10:50-55 ("The server 304 then transmits the longitude and latitude information to the designated customer GPS devices internal or external memory. . . . by any **standard** communications protocol now known[.]") (emphasis added).)

As shown, **every single step** of the method disclosed by claim 1 of the '365 patent is carried out by "conventional," "known," or "standard" technologies.  Unlike the invention in *Enfish*, nothing in the '365 patent shows any unconventional methodology that would amount to a "specific improvement to the way computers operate." *Enfish*, 822 F.3d at 1336. Thus, the focus of the '365 patent is not "on [a] specific asserted improvement in computer capabilities" but instead "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.*

The Complaint attempts to cover up the '365 patent's weaknesses by stating that the patent "recognized problems associated with then-existing devices and methods for route guidance and address entry into mobile devices."  (Dkt. 1, ¶ 14.)  The Complaint goes on to make conclusory allegations that the "systems embodied in the '365 Patent claims incorporate hardware and software components that operate in a way that was neither generic, nor well-known[.]" (Dkt. 1, ¶ 17.) SPIS finally alleges that "[t]he '365 patent solves problems . . . rooted in computer technology," that "[t]he features recited in the claims in the '365 Patent provide improvements to conventional hardware and software systems and methods," and that "[t]he improvements render the claimed invention of the '365 Patent non-generic in view of conventional components." (Dkt. 1, ¶¶ 18-19.)

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Opentv, Inc. v. Apple Inc.*, 5:15-cv-02008-EJD, 2016 WL 344845, at *3 (N.D. Cal. Jan. 28, 2016) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1985)).  Moreover, such arguments find no support in the claim language (nor in the specification) of the '365 patent.  It is well-established that "[t]he § 101 inquiry must focus on the language of the Asserted Claims themselves." *Synopsys v. Mentor Graphics*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) (rejecting argument that unclaimed details in the specification confer eligibility, despite "200 pages of code"

1  in the specification); *Ericsson*, 955 F.3d at 1329-30.  Claim 1 of the '365 patent does not recite a

2  specific "technical" solution or explain *how* that specific solution supposedly solved a problem in

3  route guidance and address entry into mobile devices.  *See, e.g.*, *Interval Licensing v. AOL*, 896

4  F.3d 1335, 1346 (Fed. Cir. 2018) (holding that "[b]ecause the instructions discuss only broad

5  functions and are not directed to any technological improvement for performing those functions"

6  and never explained "how" the results were accomplished, the claims were invalid under § 101).

7        Instead, the claim language is written in purely functional terms and is not limited to any

8  particular implementation.  Neither the specification nor claim 1 of the '365 patent present the

9  purported invention a particular form.  (*See* '365, 4:16-20 ("it is to be understood the principles of

10  the present disclosure may be applied to any type of navigation or positional information device

11  including but **not limited** to a vehicle-mounted device, a GPS receiver coupled to a desktop

12  computer or laptop, etc.") (emphasis added); 9:25-29 ("Once connected to the customer service

13  center, the user can communicate with the customer service center with voice communications or

14  with a vehicle user interface (VUI) including but **not limited** to keyboard, voice recognition, or

15  mouse or pointer.") (emphasis added).)   The specification, coupled with the broad functional

16  language in claim 1, confirms that the '365 patent does not describe how to implement the allegedly

17  claimed system, much less how to do so in any non-conventional manner.  *See Internet Patents*

18  *Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (finding an abstract idea where

19  "[t]he mechanism for [achieving the desired result] is not described, although [it was] stated to be

20  the essential innovation.").  By only claiming the desired result in a functional manner (requesting

21  and receiving address information), claim 1 of the '365 Patent falls short of claiming eligible subject

22  matter under § 101 and does not provide a unique technological improvement. *E.g., id.*; *Two-Way*

23  *Media*, 874 F.3d at 1337-38; *DirecTV*, 838 F.3d at 1258 (holding that claims were directed to an

24  abstract idea where they were "entirely functional in nature" and "untethered to any specific or

25  concrete way of implementing it."); *TriDim Innovations v. Amazon.com*, 207 F. Supp. 3d 1073,

26  1079 (N.D. Cal. 2016) ("Much like the unpatentable subject matter in *TLI Communications*, the

27  claims in question here are defined only in terms of their functions . . . ." (citing *In re TLI*, 823 F.3d

28  at 613).).  "This is because such result-focused, functional claims are 'drawn to the idea [of the

1  result] itself,' rather than a specific implementation of that result." *Fitbit Inc. v. AliphCom*, 16-cv-

2  00118-BLF, 2017 WL 819235, at *21 (N.D. Cal. Mar. 2, 2017).

3  Finally, because the claimed system is to be implemented without the use of any specialized

4  hardware or software components, the '365 patent risks preempting all methods or systems that

5  include sharing address information. *See, e.g., Hewlett Packard Co. v. ServiceNow, Inc.*, 14-cv-

6  00570-BLF, 2015 WL 1133244, at *11 (N.D. Cal. Mar. 10, 2015) (finding that claims "framed in

7  such broad, functional language as to cover any conceivable computer-automated system . . .

8  [would] broadly preempt any computer-automated system . . . [and] inhibit innovation").

9  In sum, claim 1 of the '365 patent is directed to a patent-ineligible abstract idea.

10  **2.   *Alice* step 2:  Claim 1 does not recite an inventive concept.**

11  Because the '365 patent is directed to an abstract idea, the Court must next determine

12  whether it contains an "inventive concept sufficient to transform the claimed abstract idea into a

13  patent eligible application." *Alice*, 573 U.S. at 221 (quotations omitted).  The "inventive concept"

14  is "an element or combination of elements that is 'sufficient to ensure that the patent in practice

15  amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 217-18.  To

16  pass this test, a patent claim "must include additional features" that "must be more than well-

17  understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotations omitted).

18  When searching for the requisite "inventive concept" at step 2, the court's focus must turn

19  to "whether the claim limitations **other than the invention's use of the ineligible concept** to which

20  it was directed were well-understood, routine, and conventional." *BSG Tech v. Buyseasons*, 899

21  F.3d 1281, 1290 (Fed. Cir. 2018) (emphasis added).  Here, when the underlying abstract idea of

22  sharing address information is excluded from the language of claim 1, all that remains are generic

23  techniques that cannot provide patent eligibility.  There is no "inventive concept" sufficient to

24  "transform the nature of the claim[s] into patent-eligible subject matter." *Ultramercial*, 772 F.3d

25  at 715-16; *Alice*, 573 U.S. at 214-17.  Although the stated goal of the '365 patent is to provide

26  "remotely entering, storing and sharing location addresses," not a single technical improvement is

27  disclosed, much less claimed.  ('365, 2:47-48.)  The remaining limitations of claim 1 are described

28

13

only at a high level, consisting of generic functional language like "sending a request" and "receiving . . . at least one address." ('365, claim 1.)

Even the hardware or software recited in claim 1 is insufficient to impart an "inventive concept" on the '365 patent. While the specification purports to describe the structure of an embedded system capable of sharing address information, nothing in claim 1 nor the specification discloses how the hardware must be configured in any manner, much less an inventive one. The claim limitations simply list generic hardware, such as "positional information device" and "server," without any improvement in technology. *See In re TLI Commc'ns Patent Litig.*, 87 F. Supp. 3d 773, 794 (E.D. Va. 2015) (holding that a "telephone unit limitation is another example of **generic hardware** which does not save Claim 17 because it is **not inventive**") (emphasis added). The specification fares no better—a review of the specification reveals that not even a single step of the method disclosed by claim 1 requires specialized hardware or software. *See supra*, Section III.B.1.b. "The use and arrangement of conventional and generic computer components . . . such as a database, user terminal, and server—do not transform the claim, as a whole, into 'significantly more' than a claim to the abstract idea itself." *Credit Acceptance v. Westlake Servs*., 859 F.3d 1044, 1056 (Fed. Cir. 2017); *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Two-Way Media*, 874 F.3d at 1339 (finding no inventive concept when "[n]othing in the claims . . . requires anything other than conventional computer and network components operating according to their ordinary functions"). Additionally, an "abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as [GPS Units]." *Intellectual Ventures I v. Capital One Bank U.S.A.*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

The limitations of claim 1—whether considered individually or as an ordered combination—are insufficient to add "significantly more" to the abstract idea. Because it is altogether devoid of any "inventive concept," claim 1 of the '365 patent is thus patent-ineligible under § 101. *Alice*, 573 U.S. at 221.

### 3.    The remaining claims are also abstract.

The remaining claims of the '365 patent relate to the same abstract concept of sending and receiving information.  The only differences are immaterial in the context of a § 101 analysis. *See Content Extraction & Transmission LLC v. Wells Fargo Bank N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (finding analysis of "representative claim" proper where, as here, the claims are "substantially similar and linked to the same abstract idea").

Independent claim 8 discloses a device that adds "determining location information of the requesting positional information device" and "determin[ing] route guidance based on the location of the requesting positional information device" to the method of claim 1.  ('365, claim 8.) However, such reliance on location information does not remove an otherwise patent-ineligible claim from the realm of abstract ideas.  Both the Federal Circuit and this Court have repeatedly held that performing an activity "based upon the location of the individual" or object is an abstract idea.  *See, e.g.*, *Elec. Commc'n Techs. v. ShoppersChoice.com*, 958 F.3d 1178, 1181 (Fed. Cir. 2020) (lengthy "automated notification system" claim that recited hardware used to "monitor[] the **location** of a mobile thing" was invalid); *Intellectual Ventures I v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("Providing this minimal tailoring—e.g., providing different newspaper inserts based upon the **location** of the individual—is an abstract idea."); *Evolutionary Intelligence v. Sprint Nextel*, 677 F. App'x 679, 680 (Fed. Cir. 2017) (claims directed to "systems and methods for allowing computers to process data that are dynamically modified based upon external-to-the-device information, such as **location** and time" were invalid); *Location Based Servs. v. Niantic*, 295 F. Supp. 3d 1031, 1040, 1045-49 (N.D. Cal. 2017) (claims reciting "determining a status associated with at least one of the **locations** on the map display" were invalid), *aff'd*, 742 F. App'x 506 (Fed. Cir. 2018); *Silver State Intellectual Techs. v. Facebook*, 314 F. Supp. 3d 1041, 1047-48 (N.D. Cal. 2018) (claims "directed to the abstract idea of storing and selectively sharing **location**-based information" were invalid).

The dependent claims of the '365 patent relate to (i) identifying information (dependent claims 2, 6, 9, and 13), (ii) type of information (dependent claims 3 and 10), and (iii) source and display of information (dependent claims 4, 5, 7, 11, 12, 14, and 15). But claiming variations related

1   to the type and source of information is not inventive. *See Elec. Power Grp.*, 830 F.3d at 1355.

2   Claim 12's recitation of a telematics networks is also not inventive because there is no disclosure

3   of how the generic network must be configured in any "inventive" manner to accomplish the desired

4   results. *See Credit Acceptance*, 859 F.3d at 1056.

5          None of these additional features disclosed by independent claim 8 or the dependent claims

6   amount to an inventive feature or renders the claims any less abstract. Regardless of their form,

7   therefore, all of the claims of the '365 patent fail both prongs of Alice because they are directed to

8   an abstract idea and recite no inventive concept. *See Alice*, 573 U.S. at 221.

9   **IV.    CONCLUSION**

10         For the foregoing reasons, Particle respectfully requests that the Court dismiss SPIS's

11   Complaint for failure to state a claim upon which relief can be granted.  Because leave to amend

12   would be futile, Particle requests dismissal with prejudice.

13

14   Dated:  May 13, 2021                              COOLEY LLP

15

16                                                     */s/ Reuben H. Chen*
                                                       REUBEN H. CHEN (228725)
17                                                     (rchen@cooley.com)
                                                       LAM K. NGUYEN (265285)
18                                                     (lnguyen@cooley.com)
                                                       KYUNG TAECK MINN (334439)
19                                                     (rminn@cooley.com)
                                                       3175 Hanover Street
20                                                     Palo Alto, California 94304-1130
                                                       Telephone:    (650) 843 5000
21                                                     FACSIMILE:  (650) 849 7400

22                                                     *Attorneys for Defendant*
                                                       PARTICLE INDUSTRIES, INC.

23

24

25

26

27

28